Filed 1/13/22  In re M.M. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re M.M. et al., Persons Coming Under the Juvenile Court Law. | B312465 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>O.K. et al.,<br><br>        Defendants and Appellants. | (Los Angeles County Super. Ct. No. 19CCJP05858A–B) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Juvenile Court Referee. Affirmed.

Carolyn S. Hurley, under appointment by the Court of Appeal, for Defendant and Appellant O.K.

William Hook, under appointment by the Court of Appeal, for Defendant and Appellant D.F.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal Deputy County Counsel, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \* \* \*

Mother O.K. and father D.F. appeal the juvenile court's finding that the Los Angeles County Department of Children and Family Services (Department) provided reasonable services to help them reunify with their children, now 16-year-old M.M. (who has a different father) and nine-year-old S.F.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

This family first came to the attention of the Department in September 2019, after father was arrested with a large quantity of drugs and a gun.  S.F. was with father in his hotel room at the time of the arrest.  Father did not cooperate with police, and mother had to come to the hotel to encourage father to leave the room.  Father admitted to using drugs, and said he believed mother was the one who called police, as she was aware of what father had been doing.

Mother was homeless.  Mother and father had a history of domestic violence, although they were no longer in a relationship. Mother and father were unstable, the children were not enrolled in school, and paternal grandmother often cared for the children for extended periods of time.  M.M. did not feel safe with father because of the domestic violence between him and mother.  S.F. did not feel safe with parents, and preferred to stay with paternal grandmother.

Mother admitted she knew father had a gun and was selling drugs.  The two often argued about how to coparent the children.  Nevertheless, she allowed him to have unsupervised contact with the children.

2

The children were detained from mother and father and placed with paternal grandmother. Father's visitation was to be monitored, while mother was permitted to have unmonitored visitation, on the condition that mother submit to weekly random drug testing, and that father was not allowed to visit with her.

At the September 11, 2019 detention hearing, both mother and father completed "Notification of Mailing Address" forms providing the same Inglewood address, and their current mobile numbers. The Judicial Council form (JV–140) provides that the court and Department will use the designated address "unless you notify the court or the social worker . . . of your new mailing address. [¶] Notice of the new mailing address must be provided in writing." The court confirmed on the record that the information was accurate, and admonished mother and father to update their information if it changed. The court ordered the Department to provide mother and father with referrals, including weekly drug testing, parenting classes, and individual counseling.

The Department attempted to schedule a meeting with father. Father initially did not understand why a meeting was required, believing that he did not have an open case with the Department. Father also complained he had gone to court on October 15, 2019, but that there was no hearing that day. He told the social worker mother had told him there was a hearing, even though no hearing was scheduled. The social worker told father he would receive notices of hearings in the mail, and confirmed that he had hearings scheduled for October 23 and November 18. Father agreed to meet with the Department on October 18, 2019, but he did not show up, and he did not answer or return the Department's phone calls or text messages.

Mother also failed to show up for her scheduled appointment. According to the Department's jurisdiction/disposition report, mother did not meet the social worker at the agreed upon place, did not return her calls or texts, and the hotel desk clerk reported that mother was not registered at the hotel. The Department called father to see if he had a different phone number for mother. A woman answered his phone, denied that she was mother, and said father was unavailable. Father did not return the social worker's call. Mother later called the Department from a blocked number and claimed the social worker "stood [her] up" at the hotel. She reported that she had a new phone number because her other phone "broke," but she would not provide the new number to the Department.

Father had been sending "toxic" text messages to paternal grandmother, and she had to block his calls. Mother was not communicating with paternal grandmother about her visitation, and she would pick the children up or drop them off without contacting paternal grandmother. Mother was not testing as required for the Department. She had tested negative once in September 2019 but missed four subsequent tests.

A November 2019 last minute information for the court noted that the Department had made numerous efforts to contact mother and father to attend a MAT assessment for the children but had been unable to reach them. Paternal grandmother reported that mother was allowing father to have unsupervised contact with the children. Paternal grandmother was receiving threatening text messages from mother.

Mother missed four additional drug tests. The Department was able to reach her at a different phone number than was

4

designated on the address form filed with the court. (It is unclear from the record where the Department obtained this number.) Mother agreed to meet with the social worker at Department offices on November 14, 2019. The Department still had no contact with father.

According to a last minute information for the court, mother was running late for her November 14 interview with the Department and asked to be interviewed by phone. Mother said the referral allegations were false and "made up." Mother told the social worker "she will not be enrolling in any services" and the case was "ridiculous." Mother promised to provide an updated address to the Department but did not do so during the interview.

Mother was present at the November 18, 2019 adjudication hearing; father was not. The court sustained the petition and ordered family reunification services for mother and father, including random on demand drug testing, parenting classes, and individual counseling. After observing mother repeatedly shaking her head, and stating that she would not participate in services, the court made clear that mother was required to participate in the court-ordered services in order to reunify with the children. Mother responded, "No" and "We'll see . . . ." The court ordered monitored visitation for father, and unmonitored visitation for mother on the condition that she drug test. Mother again stated, "I am not doing that."

A January 2020 last minute information for the court reported the Department had been unable to reach father, and letters sent to his designated address were returned as undeliverable. Father had not submitted to any drug tests. Mother made some contact with the Department but she also

missed several visits, and she was not testing for the Department.

According to the Department's May 2020 status review report, the children remained placed with paternal grandmother. Mother and father were living a "transient lifestyle," often moved to different hotels or motels, and did not respond to the Department's calls. Since March 2020, mother and father had barely visited the children. They did not provide any proof of participation in programs, and did not communicate any intent to participate in services.

The Department's September 2020 supplemental report stated the Department made contact with mother in June 2020. Mother told the social worker she had been trying to text her work phone, but the social worker told her the office phone was incapable of accepting text messages. In July 2020, mother texted the social worker on her mobile phone that "there's no case . . . it was thrown out" and that, because the case was "fabricated," the children must be returned to mother immediately. The social worker tried to set up a meeting with mother, but mother would not agree to meet and continued to "rant" about the Department's involvement with her family. Mother did not respond to further requests for a meeting.

Mother and father were present at the September 16, 2020 review hearing. Mother said she had given her attorney paperwork for classes she had completed. The court continued the review hearing so that the Department could provide a supplemental report to address the parents' compliance with their case plans. The court encouraged mother to remain in contact with the social worker.

6

According to the Department's November 2020 status review report, mother and father had not provided any proof of completion or progress reports for their programs. On November 6, in a face-to-face meeting, mother and father told the social worker "there were never any Court Orders" for services for them to comply with. Father said his attorney told him "the items on the case plan are suggestions only but not court orders." "[B]oth were **again** given a copy of their individual case plans but father and mother stated that they did not sign the case plan." (Boldface added.) Mother and father believed that because they never signed the case plan, and did not agree to it, they were not required to complete the programs. Father was "very argumentative." Mother and father also complained that they had never received any of the court's minute orders. The social worker emphasized that the case plan was court ordered, and that mother and father needed to complete their programs to reunify with their children.

Mother and father participated in a Children and Family Team Meeting in mid-January 2021. Mother and father expressed that they wanted to reunify with the children, but they remained fixated with their belief that the allegations, petition, and detention were unfounded. The Department agreed to provide parents with *additional* referrals for services and proposed the parties meet again in 30 days to assess the parents' progress with their programs.

In late January 2021, when the Department asked mother how her services were progressing, mother responded "I am refusing to tak[e] tests or classes I've already taken willingly." Mother continued to deny the validity of the case. Father also continued to deny that there were any "rightful court order[s]" for

him to complete services and said he would only participate in services if the Department could "prove" the court orders were lawful.

Mother and father appeared at a February 2, 2021 progress report hearing. The court admonished them that they needed to comply with their court-ordered case plans. The court told parents about the requirements of their case plans, and ordered the Department to provide parents with referrals for their programs. Mother repeatedly interrupted the court, and asked why she was being asked to drug test.

A March 2021 last minute information for the court stated mother was not drug testing and had not provided the Department with proof that she enrolled in counseling or completed parenting classes. Father was also not testing, and refused to provide progress reports to the Department, stating he would provide that information to his attorney once given "a legally binding court order." He continued to claim that his civil rights were being violated. However, father had completed two parenting classes, according to a letter provided by his attorney.

According to an April 2021 report, mother stated she enrolled in parenting classes, but she could not provide any information about the program. She was not drug testing. Father had attended additional parenting classes, and had started individual counseling, but he was not drug testing.

The contested section 366.21 combined six– and 12–month review hearing was held on April 12, 2021. Mother requested that the children be released to her, or alternatively, that she receive six months of additional services, reasoning that she had not been provided with reasonable services. Father also argued

8

the Department failed to provide reasonable services because the Department failed to maintain contact with him.

The juvenile court found that mother and father had refused to comply with the court's orders, and that the Department's reports reflected consistent efforts by the Department to contact mother and father. The court ordered six months of additional reunification services, and again admonished the parents to comply with the court's orders.

Mother and father timely appealed.

**DISCUSSION**

When providing reunification services, the Department must make a good faith effort to provide reasonable services " ' "specifically tailored to fit the circumstances of each family" ' " and " ' "designed to eliminate those conditions which led to the juvenile court's jurisdictional finding." ' " (*In re K.C.* (2012) 212 Cal.App.4th 323, 329.) At the six– and 12–month review hearings, the juvenile court must determine whether the Department provided "reasonable services" to the parent during that review period. (§ 366.21, subds. (e)(8), (f)(1)(A).) It is the Department's burden to establish that it has provided reasonable services. (§ 366.21, subds. (e)(1), (f)(1).)

" 'To support a finding reasonable services were offered or provided, "the record should show that the [Department] identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult. . . ." ' " (*T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1240; *Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1426.) The "reasonableness

9

of the [Department's] efforts are judged according to the circumstances of each case." (*Robin V. v. Superior Court* (1995) 33 Cal.App.4th 1158, 1164.) Efforts must be made to provide services " 'in spite of the difficulties of doing so or the prospect[] of success.' " (*Id.* at pp. 1164–1165.)

We review the juvenile court's reasonable services finding for substantial evidence. (*Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, 419–420.) We view the evidence in the light most favorable to the juvenile court's ruling, resolving conflicts and indulging all reasonable inferences in favor of the finding. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

Neither party disputes that the services ordered by the court were appropriate. Instead, mother and father argue the Department failed to communicate the case plan to the parents, failed to maintain reasonable contact with them, and that the record does not disclose what referrals were provided to mother and father.

We find that substantial evidence supports the juvenile court's reasonable services finding. Mother and father did not show up for scheduled appointments, did not return the Department's letters, calls, or text messages, and consistently denied that they were required to participate in services. The court repeatedly admonished mother and father to communicate with social workers and participate in their case plan, which the court explained to both parents at several hearings, and the court admonished them to provide current contact information to the court and Department. Mother and father never expressed any confusion about what they were required to do, only defiantly asserting that they were not required to comply with the court's orders.

10

## DISPOSITION

The order is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


STRATTON, J.


HARUTUNIAN, J.*

---

*	Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.